UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA,      )
           )
      v.           )      Case No. 2:25-cr-00015-cr
           )
TERESA YOUNGBLUT,      )
    Defendant.      )

**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER TO
PROHIBIT GOVERNMENT ACCESS TO DEFENDANT'S PRETRIAL DETENTION
RECORDS AND MOTION TO FILE UNDER SEAL**

NOW COMES Defendant, Teresa Youngblut, through her counsel, Steven L. Barth and the Office of the Federal Public Defender of Vermont, and respectfully requests that the Court issue, pursuant to the Court's inherent supervisory powers, the Fifth, Sixth, and Eighth Amendments, 18 U.S.C. Section 3005, the Health Insurance Portability and Accountability Act ("HIPAA") protections, the attorney-client privilege, and Federal Rules of Criminal Procedure 12.2 and 16, a protective order prohibiting the government, including its investigators and law enforcement, from unilateral access to the defendant's pretrial detention records. This Motion seeks a process between this Court and Ms. Youngblut to ensure that protected records are not disclosed to the government, but rather that all records are reviewed before any disclosure is allowed. As discussed below, the Order requested by Ms. Youngblut is in accord with orders issued by other federal courts in capital-eligible prosecutions. See *United States v. Gendron*, No. 22-CR-109-LJV, 2024 WL 1853385, at *6 (W.D.N.Y. Apr. 29, 2024); *United States v. Saipov*, 17-cr-722 (VSB) (S.D.N.Y. Jan. 5, 2018); *United States v. Burkhalter et al.*, 18-cr-36-W-BCW (W.D. Mo. Aug. 13, 2020); *United States v. Andrew Rogers*, 16-cr-00018-WTL (S.D. Ind. Oct. 16, 2017).

## I.    Introduction.

Ms. Youngblut is in custody in conjunction with the fatal shooting of Border Agent David Maland on January 20, 2025. While she has not yet been indicted for this killing, the instant case was one of only two cases specifically mentioned in Attorney General Bondi's memorandum of February 5th entitled "Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions.[1]"

Ms. Youngblut is currently being held █████████████████████████████ ███████ It is believed that Ms. Youngblut was transferred there on February 12, 2025, after having been held at ███████████████████████████████ Counsel believes that Ms. Youngblut was transferred to █████ immediately after her initial appearance on a Felony Complaint on January 27, 2025.  Prior to being transferred to █████ counsel has reason to believe that Ms. Youngblut was at ████████████████████████████ immediately following her arrest on January 20, 2025.  Counsel believes that both █████ and █████maintain records relating to their inmates' pretrial detention which include, inter alia, information about the length, frequency and dates of legal visits; names and affiliation of legal and other professional visitors; mental health observations and evaluations; medical assessments; logs and copies of correspondence both written and phone recordings; commissary requests and purchases; internet searches; library activity; records of daily activity; records of correspondence with defense counsel that may include requests for, and approval/denial of, expert visits (among

---

[1] "Absent significant mitigating circumstances, federal prosecutors are expected to seek the death penalty in cases involving the murder of a law-enforcement officer and capital crimes committed by aliens who are illegally present in the United States. This policy applies to the recent murder of U.S. Customs and Border Patrol agent David Maland during a traffic stop in Vermont."

other things).  Many of the aforementioned detention records and any similar records created by

███████ (collectively, the "Records") reflect directly on Ms. Youngblut's medical, physical, and

mental condition as well as defense strategies and work product. As noted below, these records

are protected by various privileges and might identify consulting experts and other members of

the defense team who might be communicating with Ms. Youngblut in preparing her defense.

Because the government has no right to such Records, counsel asks this Court to issue an

order barring the government from accessing them.  To the extent the government has already

gained access to such Records, Ms. Youngblut asks this Court to issue an order that the originals

and any and all copies be returned to counsel for Ms. Youngblut and further prohibit the

government's use of such Records (even if by memory only) against Ms. Youngblut in any way,

including in any future filing, hearing or trial.

II.    **Prosecution access to Ms. Youngblut's Records is without legal authority and violates constitutional protections, the Federal Rules of Criminal Procedure, and the work-product doctrine.**

This Court should enter a protective order prohibiting the government from unilaterally

accessing Records relating to Ms. Youngblut's pretrial detention. These Records contain

information that the prosecution has no legal right to access or legal authority to obtain.

Prosecution access to such Records violates the Fifth and Sixth Amendment rights to counsel,

Due Process and Equal Protection, as well as HIPAA protections[2] and other legal privileges

---

[2] HIPAA, Public Law 104-191 (1996), protects all individually identifiable health information held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral.  45 C.F.R. § 160.103; *see also* U.S. Department of Health and Human Services, *Health Information Privacy* (available at: https://www.hhs.gov/hipaa/for-professionals /privacy/laws-regulations/index.html); *Est. of Lillis v. Bd. of Cnty. Commissioners of Arapahoe Cnty.*, No. 16-CV-03038-KLM, 2019 WL 3386471, at *3 (D. Colo. July 26, 2019) (holding that the Arapahoe County Detention Facility is a "covered entity" under HIPPA).
.

3

including attorney/client, doctor/patient and psychologist/patient, and circumvents the rules of discovery. Such Records (i) provide insight into Ms. Youngblut's daily life in detention;[3] (ii) provide insight into the work of her defense team and their trial preparation; and (iii) contain legally protected information about her physical and mental health. These detention records should not be produced to the prosecution unless and until made relevant by the defense.

Post-accusatory mental examinations implicate both Fifth and Sixth Amendment protections. *See Estelle v. Smith*, 451 U.S. 454, 469-471, 473 (1981) ("Respondent's Fifth and Sixth Amendment rights were abridged by the State's introduction of Dr. Grigson's testimony at the penalty phase, and, as the Court of Appeals concluded, his death sentence must be vacated."). *See also Powell v. Texas*, 492 U.S. 680, 686 (1989) (a capital defendant's Fifth Amendment right against compelled self-incrimination precludes the state from subjecting a person to a psychiatric examination concerning future dangerousness without first informing the defendant that they have a right to remain silent and that anything they say can be used against him at a sentencing proceeding).

Staff at the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ did not inform Ms. Youngblut that what she said and did during the course of her custodial observations or assessments could be used against her

---

[3] Such unfettered access to Ms. Youngblut through the Records—solely because she is in custody—is a form of discovery production that is one-sided. That is, Ms. Youngblut does not have such access to any of the government's witnesses. One-sided discovery violates due process. *See Wardius v. Oregon*, 412 U.S. 470, 472, 93 S. Ct. 2208, 2211, 37 L. Ed. 2d 82 (1973) (the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi discovery rules that required the defense to disclose the details of its alibi defense unless reciprocal discovery rights are given to the defendant); *United States v. Bahamonde,* 445 F.3d 1225, 1228 (9th Cir. 2006) (finding a due process violation after court refused the defense's attempt to call a Department of Homeland Security agent because the defense had failed, pursuant to federal regulation, to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought," when no such requirement applied to the government).

in court. *Estelle*, 451 U.S. at 469-471, 473. The prosecution should not be permitted an end-run around these protections by relying on custodial staff to generate and produce information that is in all other circumstances privileged and protected. Nor should Ms. Youngblut be penalized because she is in custody, rather than at liberty, while her charges are pending.

Moreover, the Federal Rules of Criminal Procedure explicitly provide for the circumstances under which the prosecution may view a mental health assessment of a defendant or obtain discovery from a defendant. The procedure under Rule 12.2 is informative because it balances a defendant's constitutional right against compelled disclosure with fairness to the government when a defendant will seek to use the results of such an examination. *See* Fed. R. Crim. P. 12.2, Advisory Committee Note to 1975 enactment ("The purpose of this rule is to secure the defendant's fifth amendment right against self-incrimination."); Fed. R. Crim. P. 12.2, Advisory Committee Note to 2002 amendment ("The Supreme Court has recognized that use of a defendant's statements during a court-ordered examination may compromise the defendant's right against self-incrimination.").

Federal Rule of Criminal Procedure 12.2(b) governs the timing of disclosure of "Expert Evidence of a Mental Condition."  Without the protective order requested here, attorneys for the government will be able to learn the identity of the defense experts and consultants, how often they visit and for how long, and their area of expertise. This information will give the government the tactical advantage of knowing the experts with whom the defense is consulting before they are entitled to such information under Rule 12.2(b)(2), bypassing the procedures established by Rules 12.2 and 16.

Rule 16(b) governs discovery obligations of the defendant, requiring production only of documents the defendant intends to use in her case-in-chief at trial.  *See* Fed. R. Crim. P.

5

16(b)(1)(A), (B) and (C) (only requiring disclosure if the defense possesses such discovery and intends to use it at trial in its case-in-chief). Further, Rule 16(b)(2) specifically states that certain defense information is not discoverable—including reports and memoranda produced by the defendant or the defendant's agent and statements between a defendant and the defendant's attorney or agents. *See* Rule 16(b)(2)(A) and (B) (protecting from disclosure "reports, memoranda, or other documents made by . . . the defendant's attorney or agent during the case's investigation" and "a statement made to the defendant, or the defendant's attorney or agent, by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness"). At this point, none of Ms. Youngblut's conduct while in pretrial detention is at issue, nor has she yet made or indicated what, if any, portions of her custodial conduct and experience she may put at issue during trial, and thus it is not discoverable by the prosecution.

Similarly, the prosecution's access to the Records would allow unfair and prohibited insight into the defense case strategy, as well as provide information regarding Ms. Youngblut that is only available by virtue of her pretrial detention. ████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████ Ms. Youngblut's visitor logs would reveal the identity (and potentially the area of specialty) of any expert with whom the defense consults. The defense does not enjoy the comparable benefit of monitoring the government's potential witnesses.

Federal law contemplates that defense expert services are privileged and not subject to disclosure to the prosecution. 18 U.S.C. § 3006A(e)(1) provides that an attorney for a person unable to afford counsel may apply ex parte for "investigative, expert, or other services necessary for adequate representation" and that a court may determine the need for such services

in an ex parte proceeding. *See also* 18 U.S.C. § 3599(f) (contemplating ex parte requests for investigative or expert services upon proper showing of need for confidentiality).

Finally, the work product doctrine protects an attorney's work product as well as that of the attorney's agents. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney. . .. [T]he doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial."). To permit the government access to the identity of experts and various other members of the defense team who visit the defendant at any holding facility, including, but not limited to ▮▮▮▮▮▮▮▮ would improperly reveal the defenses' thinking, lines of investigation, and defense strategies, and thus violate the work product doctrine.

There are no valid grounds for the government to access Ms. Youngblut's Records at this stage of the proceedings. To permit such access violates constitutional protections, the Federal Rules of Criminal Procedure, and the work-product doctrine.

### III.    Precedent.

The order requested by Ms. Youngblut is in accord with orders issued by other federal courts in death-penalty eligible prosecutions. *See e.g. United States v. Gendron*, No. 22-CR-109-LJV, 2024 WL 1853385, at *6 (W.D.N.Y. Apr. 29, 2024). In *Gendron*, an on-going case, the Court ordered all pretrial detention records be provided to the defense for review. After such review, the defense creates a log of any records they want to withhold, identifying the applicable privilege or right they believe protect the records. The *Gendron* court reviews any disputed records in camera and determines whether a right or privilege applies. The court also required the

7

government to produce evidence that inmates are given notice that their calls are monitored and recorded as well as the institutional interest in such monitoring and recording. *See also*, *United States v. Saipov*, 17-cr-722 (VSB) (S.D.N.Y. January 5, 2018); Doc. #19 (ordering that the government could not seek access to visitor log without prior court approval); *United States v. Burkhalter et al.*, 18-cr-36-W-BCW (W.D. Missouri, August 13, 2020), Doc. #556 (protective order prohibiting jail facility from providing to federal prosecutors or investigators information related to mental health evaluations or treatment without a court order allowing such production); *United States v. Andrew Rogers*, 16-cr-00018-WTL (S.D. Ind. Oct. 16, 2017), Doc. 55 (same).

**IV.    Motion to seal**.

Ms. Youngblut moves this Court to seal this motion and any order that results from it. Ms. Youngblut further asks this Court to direct the government to move to seal any response to this motion.  This motion concerns the location and conditions of Ms. Youngblut's confinement.

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████

**V.    Conclusion**

For all these reasons, Ms. Youngblut asks this Court to enter a protective order prohibiting the government's access to Ms. Youngblut's Records. To the extent the prosecution has already received any of these Records, Ms. Youngblut asks the Court to order that the originals and all copies be returned to counsel for Ms. Youngblut and further prohibit the

government's use of such Records (even if by memory only) against Ms. Youngblut in any way,

including in any future filing, hearing or trial.

     Ms. Youngblut further requests that this motion be filed under seal.


Dated: March 4, 2025

<div style="margin-left:40%">

By:    */s/ Steven L. Barth*
        STEVEN L. BARTH
        Assistant Federal Public Defender
        Office of the Federal Public Defender
        District of Vermont
        95 Pine Street, Suite 150
        Burlington, Vermont 05401
        Phone: (802) 862-6990
        Email: Steven_Barth@fd.org
        Counsel for Teresa Youngblut

</div>