UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 2:25-cr-00015-1 |
| | ) |
| TERESA YOUNGBLUT, | ) **Filed Under Seal** |
| Defendant. | ) |

**RESPONSE OF THE UNITED STATES IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PROHIBIT GOVERNMENT ACCESS TO DEFENDANT'S PRETRIAL DETENTION RECORDS AND MOTION TO SEAL**

NOW COMES the United States of America, by and through its attorney, Michael P. Drescher, Acting United States Attorney for the District of Vermont, and responds in partial opposition to defendant Youngblut's "Motion for a Protective Order to Prohibit Government Access to Defendant's Pretrial Detention Records and Motion to File Under Seal" filed under seal in this case on March 4, 2025 (the "Motion"). In the Motion, the defendant seeks "a protective order prohibiting the government, including its investigators and law enforcement, from unilateral access to the defendant's pretrial detention records." (Motion, p. 1.) The defendant asserts that the various detention facility records addressed in the Motion "are protected by various privileges" and that "the government has no right to such Records." (Motion, p. 3.) The United States contends that breadth of records the defendant asserts as privileged or protected is overly broad and that the defendant understates federal investigators' interests in and rights to at least some of the records subject to the Motion. Nevertheless, the United States does not oppose the development and implementation of screening processes for certain pretrial detention records in this case to ensure appropriate privileges are protected. Accordingly, the United States respectfully requests the Court hold any ruling on the Motion in

abeyance while the parties attempt to reach a stipulated screening process and proposed Protective Order.

## I. Background Information and Contentions

Defendant Youngblut is charged by Indictment with assaulting a federal officer with a deadly weapon, in violation of 18 U.S.C. § 111, and with carrying, brandishing, and discharging a firearm during and in relation to that assault in violation of 18 U.S.C. § 924(c)(1)(A)(iii).[1] (Doc. 30.) The defendant was encountered by United States Border Patrol Agents on January 20, 2025, in Orleans County, Vermont, and the defendant has been either hospitalized or detained in law enforcement custody since that date. After being released from the hospital, the defendant made an initial appearance before the Court on January 27, 2025, (Doc. 22), and she was ordered to be detained in the custody of the United States Marshal following a detention hearing on January 30, 2025, (Doc. 28). The United States is aware of the defendant being held in two pretrial detention facilities under contract with the United States Marshals Service (USMS): the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

In the Motion, defense counsel indicated a belief that both ▌▌▌ and ▌▌▌ created and maintain records regarding various aspects of the defendant's detention, and the United States concedes it is likely that both facilities created and maintained records in many or all of the listed categories. In many investigations, the United States requests copies of pretrial detention records in some of those categories—most notably the list of approved visitors and contacts, copies of

---

[1] The defendant is not presently charged with a violation constituting a capital crime. The United States acknowledges the reference in the Attorney General's memorandum of February 5, 2025, to the death of the United States Border Patrol Agent does involve this case. The investigation into the circumstances of the agent's death is ongoing, and the United States acknowledges that additional or alternative charges could be sought in a superseding indictment.

electronic messages sent and received, and copies of phone and video-call recordings. As to that subset of records, the United States does not concede that those "records are protected by various privileges" or that it has "no legal right to access or legal authority to obtain" (Motion, p. 3) those records—particularly when those media typically present warnings that the communications are not confidential, when the requests of the United States include instructions to exclude any communications with defense counsel, and when many detention facilities include separate lines for communications with attorneys and for calls/visits with friends and family. The United States therefore contends the defendant's request to prohibit its access to that subset of records is overbroad. Such records could be relevant to ongoing and/or independent investigations while the defendant would have no reasonable expectation of privacy over any given communication medium. Upon the Court's guidance, the United States is willing to acquire and provide information to the Court regarding the warnings detainees receive regarding monitoring and non-confidentiality of their communications over various platforms available to them at the relevant detention facility.

Records in other categories listed in the Motion could fall within recognized privileges, could identify those assisting in preparation of the defense, or could be construed to contain (or, in combination, reveal) work product in any given case. The United States does not routinely request from detention facilities "information about the length, frequency and dates of legal visits; names and affiliation of legal and other professional visitors; mental health observations and evaluations; medical assessments; . . . library activity; . . . [or] records of correspondence with defense counsel that may include requests for, and approval/denial of, expert visits," (Motion, pp. 2-3), unless such materials have been placed at issue by the defendant. The defendant has not identified specific records of concern but has broadly described categories of

3

records that might exist and could—individually or in aggregate—be problematic. The defendant's request to bar the United States from accessing broad categories therefore appears speculative and premature. The United States is willing to work with the defendant in developing an acceptable procedure under which (1) the United States will request records in these specified categories, if it deems such a request appropriate, after seeking leave of the Court, and (2) the records would be produced first either to the Court or the defendant for an initial review to preserve applicable privileges, privacy rights, or the work product doctrine.

Other records in categories listed in the Motion could constitute routine information necessary for case administration that would not be privileged. For example, a given defendant's disciplinary records, current detention facility, cell location within the facility, responses to classification questions, and indications of a propensity for self-harm could all be necessary information for USMS—a component of the Department of Justice—to ensure appropriate safety measures and separations are maintained; however, such records would fall within the contested category of "records of daily activity". (Motion, p. 2.) Because records of the defendant's location, disciplinary events, and other safety concerns are necessary for the USMS to conduct its activities, access to those records should not be denied to the United States pursuant to the Motion. The defendant would remain able to seek the exclusion of any records or statements from further proceedings with subsequent motions.

## II. Representations of the United States

In the Motion, the defendant asserts that the staff at the hospital and detention facilities "did not inform Ms. Youngblut that what she said and did during the course of her custodial observations or assessments could be used against her in court." (Motion, pp. 4-5.) Other than a recorded, Mirandized interview conducted by the Federal Bureau of Investigation at the hospital,

4

which was provided to the defendant pursuant to Rule 16 discovery, the United States is not presently aware of any statements made by the defendant at those facilities, any advisements the defendant may have been given by the facilities' staff, or what observations or assessments may have been undertaken at the facilities. The defendant does not indicate that she made any statements, participated in any assessments, or was subject to any specific observations. Further, the United States has not requested any records regarding such observations or assessments. Accordingly, the United States can neither indicate whether any records of such observations, assessments, or statement exist nor assess whether any records would be privileged in any way.

The United States did request and obtain a narrow selection of records that would fall within broad categories of Records identified within the defendant's Motion. The United States requested records of the defendant's jail communications from ▮▮▮▮▮ prior to the filing of the Motion. ▮▮▮ responded with a negative report, indicating there were no responsive records. On or about March 5, 2025—the day after the filing of the Motion—the United States received a call from ▮▮▮ indicating that it had responsive records and would be forwarding electronic copies of recorded calls, emails, texts, and a video recording to the United States Attorney's Office (USAO). On or about March 7, 2025, the USAO received a priority mail package containing a printed certification of business records and one USB storage device from ▮▮▮. Because it had received notice of the Motion, the United States chose—without conceding the merits of the Motion—to not access, catalogue, or process the electronic records on that storage device, and it will not do so until further direction is received from the Court. Accordingly, the United States is currently unaware of the storage device's contents and whether they would be privileged in any way.

Following a preliminary review of its case information database, the United States has not identified any records in its possession that would be subject to the Motion. Counsel for the defendant has not identified any materials previously provided in Rule 16 discovery that would be subject to the Motion. If counsel for the United States later identifies any records that could be subject to the Motion, it will inform the Court and the defendant. The United States will not request via subpoena, warrant, or other mechanism any records it determines could be deemed subject to the Motion from any pretrial detention facility or medical treatment facility until further direction is received from the Court.

### III. Proposed Interim Resolution to Defendant's Motion

The United States neither concedes nor denies any of the allegations or legal conclusions suggested in the defendant's Motion at this time. Rather, the United States suggests that a ruling on the defendant's Motion may be premature. The United States has represented in this response that no records subject to the defendant's Motion have knowingly been reviewed by government counsel, that the only records subject to the defendant's Motion have been isolated pending further direction from the Court, and that it will not request further records subject to the defendant's Motion pending further direction from the Court. The defendant has not alleged that the United States has requested or reviewed any other materials subject to the Motion. Accordingly, the United States respectfully suggests the Court defer ruling on the Motion until the parties confer and propose a stipulated Protective Order establishing jointly acceptable methods of reviewing the extant records and requesting future records that might fall within the Motion. If the parties are unable to reach a stipulated agreement in that period, each could submit alternative proposed Protective Orders for the Court's consideration.

## IV. Requested Leave to File Belated Response

Undersigned counsel for the United States acknowledges that this response is belated under Local Rule 7(a)(3) because of his own fault and not that of other involved individuals. Undersigned counsel readily acknowledges the receipt of an email from defense counsel with the defendant's Motion on the day of its submission and accepts responsibility for neglecting to calendar the response based on that email. Defense counsel later asked the United States about a response after one should have been submitted; in a later communication on March 24, 2025, defense counsel agreed to not oppose a late-filed response. Based on the above representations regarding the status of any materials potentially subject to the Motion, the United States respectfully suggests that its delayed response would not be prejudicial to the defendant. The United States requests leave of the Court to file this belated response—unopposed by the defendant in its timing—in partial opposition to the Motion.

## V. Motion to Seal

In this filing, the United States is responding to a Motion that contained a request to maintain it under seal and to direct the government to move to seal any response. Counsel for United States did not receive confirmation that the Motion remained under seal pursuant to that request or a direction to request that its response be sealed, but it notes that the Motion has not been added to the public docket. Further, the United States does not object to maintaining the matter under seal at present because it involves the location and security of the defendant and possible implications about the defendant's physical and mental health. Accordingly, the United States moves to seal this response.

## VI. Request for Relief

Based on the above representations, the United States respectfully requests the Court hold any ruling on the Motion in abeyance for at least 30 days while the parties attempt to reach a stipulated screening process and proposed Protective Order.

Dated at Burlington, in the District of Vermont, March 27, 2025.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney

By: _____
Matthew J. Lasher
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
matthew.lasher@usdoj.gov