

OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF VERMONT

| FEDERAL PUBLIC DEFENDER | 95 PINE STREET | ASSISTANT FEDERAL DEFENDERS |
| --- | --- | --- |
| MICHAEL L. DESAUTELS | SUITE 150 | STEVEN L. BARTH |
|  | BURLINGTON, VERMONT 05401 | CHARLES N. CURLETT, JR. |
|  | TEL: 802.862.6990 | BARCLAY T. JOHNSON |
|  | FAX: 802.862.7836 | EMILY C. KENYON |
|  | https://vt.fd.org |  |

June 19, 2025

AUSA Matthew Lasher
United States Attorney's Office
District of Vermont
United States Courthouse and Federal Building
Burlington, Vermont 05402-0570

Dennis E. Robinson, Esq.
United States Department of Justice
Criminal Division, Violent Crime and Racketeering Section
1301 New York Ave, N.W.
Washington, DC 20530

Lisa M. Thelwell, Esq.
United States Department of Justice
Criminal Division, Violent Crime and Racketeering Section
1301 New York Ave, N.W.
Washington, DC 20530

VIA: EMAIL

       **Re:** *United States v. Teresa Youngblut*, **2:25-cr-00015-cr**
            **Mitigation Submission**

Dear AUSA Lasher:

    On June 2, 2025, you emailed me to inform me that the Capital Case Section of the Department of Justice ("CCA"), was offering the defense an opportunity to meet on or before August 1, 2025. You informed me that the purpose of such a meeting, to be held via video conference, was an opportunity for the defense team to present any reason or reasons why the death penalty should not be sought if a death eligible superseding indictment is returned. On June 10, 2028, you updated me that a meeting had been unilaterally set for July 28, 2025, because you had not heard from me in the interim. Any written submission would need to be submitted in advance of this meeting date.

    You did not hear from me earlier as we are still in the early stages of building our team and have been trying to assess how much time we would realistically need in order to meaningfully participate in

this critical stage of the process. With this letter, I am asking for more time – at least six additional months – to prepare a defense submission and presentation.[1] In light of how important this meeting is, both to our client, and to the fairness of a process that is intended to avoid arbitrary or inconsistent application of the most serious penalty, I hope you will consider agreeing to an extension of time for the defense submission and presentation to the DOJ. In previous letters sent to you on April 23 and May 14, 2025, I articulated several reasons why we need more time for the mitigation submission that went to the U.S. Attorney's Office, District of Vermont.   I reiterate those same concerns here, and I have attached those letters here for your convenience.

  Since my last letter of May 14, our office has been working diligently to identify learned counsel, the assistance of which is required in a potentially capital case. 18 U.S.C. § 3005. On June 12, 2025, capitally learned counsel was appointed to the case.[2]   You may recall, our previous learned counsel withdrew from the case before having an opportunity to work on the case in any substantive way.   Our new learned counsel does not yet have a budget approved by the Circuit.   And, in any event, she is going to be substantially unavailable to the defense team until July 10 due to a pre-existing work deadline and family vacation.   Also, we continue to develop our team, including searching for a mitigation specialist—a minimum requirement according to the ABA guidance on capital cases. ABA Guideline § 4.1(A)(1) at 28 and 33. As a result, the mitigation investigation that would ordinarily precede and form the basis of the defense submission is still in its earliest stages.

  In addition, on June 2, 2025, we received a second voluminous discovery production from the government. As I understand it, our meeting with the CCA is a chance to put forth any information or mitigating factors that would inform the government's decision in whether to seek a sentence of death, which would include aspects of the government's case, eligibility factors, and potential aggravating factors.   A meaningful review of the government's discovery is thus an essential part of preparing a meaningful defense submission. The defense is still reviewing the discovery that has been produced, a process that has been substantially hindered by our client being detained two and one-half hours away. And even though our review of the discovery is ongoing, we have already identified a number of items that have not been produced. We will send a request for follow-up discovery shortly but until we receive the requested materials, any defense submission necessarily will be limited.

  Finally, as a courtesy, I want to let you know that we anticipate filing a motion with the district court requesting an order for the defense to be provided additional time in which to make a meaningful presentation to the CCA.

---

[1] Since 2010, forty-two defendants have been authorized for capital prosecution and have actually started a federal capital trial. Excluding five of those cases because of extended delays caused by a retrial or the COVID-19 pandemic, the average period from the filing of a capital indictment to authorization has been 14 months.   Here, a six-month extension of the authorization process would still be well under that average.

[2] Due to the significant uptick in potential authorized cases, the number of learned counsel available around the country is smaller than in recent years.   This substantially delayed our search for learned counsel.

Thank you in advance for your consideration of this request for more time. I would be happy to discuss this request further by phone or in person if that would be helpful.

Sincerely,

/s/ *Steven L. Barth*

Steven L. Barth