

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF VERMONT

INTERIM FEDERAL PUBLIC
DEFENDER
STEVEN L. BARTH

95 PINE STREET
SUITE 150
BURLINGTON, VERMONT 05401
TEL: 802.862.6990
FAX: 802.862.7836
https://vt.fd.org

ASSISTANT FEDERAL DEFENDERS
SAM ANSELL
CHARLES N. CURLETT, JR.
BARCLAY T. JOHNSON
EMILY C. KENYON

October 14, 2025

AUSA Matthew Lasher
United States Attorney's Office
District of Vermont
United States Courthouse and Federal Building
Burlington, Vermont 05402-0570

Dennis E. Robinson, Esq.
United States Department of Justice
Criminal Division, Violent Crime and Racketeering Section
1301 New York Ave, N.W.
Washington, DC 20530

Lisa M. Thelwell, Esq.
United States Department of Justice
Criminal Division, Violent Crime and Racketeering Section
1301 New York Ave, N.W.
Washington, DC 20530

VIA: EMAIL

> **Re: *United States v. Teresa Youngblut*, 2:25-cr-00015-cr**
> **Discovery Requests**

Dear AUSA Lasher, Mr. Robinson, and Ms. Thelwell,

Following up on our preservation request of February 14, 2025, and based on our preliminary review of the two discovery productions made so far in this case, we submit this initial request for additional discovery, with references to bates numbers where appropriate. These preliminary requests fall into three broad categories: (1) a review of physical evidence; (2) complete case files underlying any forensic analysis; and (3) follow-up from apparent or possible gaps in the discovery produced to date.

We anticipate additional and more specific requests based on later productions, further

1

investigation, and a more detailed review of certain aspects of the discovery. For now, on behalf of the defendant, Teresa Youngblut, we request that the government provide discovery in this case pursuant to the Fifth and Sixth Amendments to the Constitution, Rule 16 of the Federal Rules of Criminal Procedure, Local Criminal Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

This request encompasses documents and information in the possession, custody, or control of, or that have been reviewed by, the Department of Justice's Criminal Division, the U.S. Attorney's Office for the Districts of Vermont, Maryland, Northern District of California, the Eastern District of Pennsylvania, and the Eastern District of North Carolina and any federal, state, or local agency allied with the prosecution or involved in any way in investigating the activities alleged in the Indictment or related conduct, including but not limited to the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), U.S. Customs and Border Protection (CBP), the Federal Bureau of Investigations (FBI), the Bureau of Alcohol, Tobacco and Firearms (ATF), the Joint Terrorism Task Force, the Office of the Inspector General (OIG), Vermont State Police, Orleans County Sheriff's Department, Newport City Police Department, Lyndonville Police Department, the Constables of Coventry, the Vermont Attorney General's Office, the Department of State's Attorneys and Sheriff and the Orleans States' Attorney, as well as federal and state agencies in Vallejo, California, Chester Heights, Pennsylvania, and Frostburg, Maryland, Seattle and Kirkland, WA, Chapel Hill, North Carolina, Chatham County, North Carolina, and Sonoma County, California, including but not limited to the North Carolina State Highway Patrol, the U.S. Coast Guard, the Pennsylvania State Police, the Delaware County, Pennsylvania Sheriff's Office, the South Dakota Sheriff's Office and Highway Patrol, the Solano County, California District Attorney's Office, the Maryland State Police, and Maryland Natural Resource Police.

As used in this letter, the words "government" and "you" include your office and the above-referenced federal, state and local agencies. Any references to agents, law enforcement officers, and the like, include the above-referenced federal state and local agencies. All of these requests are continuing in nature, requiring supplementation in accordance with Rule 16(c).

Also, please note that all requests referencing "Recordings" are meant to include any recording (whether written, typed, or electronic (audio or video)) regardless of the medium by which they were made or upon which they were saved.

## A.    Request for Review of All Physical Evidence

First, we request an opportunity to examine all physical evidence recovered as part of the ongoing investigation in this case, including evidence recovered in other states.   Please provide some dates that work for the government so that we may get this scheduled in the near future.

## B.    Case Files Related to Forensic Analysis

Second, we request prompt production of the following discovery relating to forensic

analysis conducted in this case:

1.      Complete case files relating to the autopsies of David Maland and Felix Bauckholt, including all bench notes, communications, drawings, diagrams, X-rays, photographs or videos. (For example, we have some notes at Bates 2265-2265.03, but it is unclear whether those represent all of the medical examiner's notes from Agent Maland's autopsy).

2.      Complete case files related to any forensic analysis conducted fully or in part by Jason V. Miller, including all bench notes, handwritten notes, and worksheets, communications, photographs, laboratory reports, results of analyses, including preliminary tests and screening results, computer print outs, chain of custody logs, communication logs and examination or sampling plans.

3.      Complete case files related to any forensic analysis conducted fully or in part by Erich D. Smith, including all bench notes, handwritten notes, and worksheets, communications, photographs, laboratory reports, results of analyses, including preliminary tests and screening results, computer print outs, chain of custody logs, communication logs and examination or sampling plans.

4.      The Laboratory Operations Manual and the Standard Operating Procedures relied upon in relation to the examinations of any evidence in this case.

5.      Any data files and database information associated with any forensic testing done in this case, including any and all documentation related to search queries, input commands and output.

6.      Any and all statistical information relied upon to interpret tests. Please inform us whether any statistical method was used to calculate probabilities in the case. If so, please identify the statistical method used to calculate probabilities in this case. In addition, please provide copies of the materials that were used or relied upon in performing any statistical analyses in this case.

7.      Documentation of analyst background, training, and expertise for each person involved in conducting or reviewing any evidentiary testing or forensic analysis provided in this case, including: name and business address, current résumé or *curriculum vitae*, job description, list of publications, and certifications; laboratory training records, copies of all proficiency tests and results, any error records, all testimony reviews, and a comprehensive list of cases in which the examiner involved in testing testified.

8.      Copies of all licenses or certificates of accreditation held by the testing laboratory, any and all audit reports for the last five years relating to the testing laboratory used in this case; preliminary or final findings of non-conformance with accreditation, industry or governmental standards or laboratory protocols.

9.      Copies of all validation studies conducted by the lab or agency and/or relied on by the lab or agency in connection with firearm/toolmark evaluation, analysis, and/or comparison.   These should include (but are not limited to) studies to show that the

3

specific protocols applied in this case produce reliable (repeatable, reproducible and accurate) results.

10. All communications regarding the case between any examiner, police officers and government attorneys including but not limited to oral communications, reports, letters, and emails.

11. With respect to any digital data imaged or acquired from a mobile or non-mobile digital device, or obtained from any internet service provider, please provide:

   a. All verifiable and authenticated image files that were acquired utilizing forensic software in original native file format with any and all relevant digital verifications (hash values) associated with the data seized, to include any RAM (random access memory) acquisitions seized;
   b. All extractions (acquisitions) conducted on the devices (Logical, File System, and/or Physical) that were acquired utilizing forensic software in original native file format with any and all relevant digital verifications (hash values) associated with the data seized;
   c. A Cellebrite Reader Report (including the appropriate Cellebrite Reader .exe program version to analyze the acquisition) if applicable;
   d. All forensic reports and notes generated by law enforcement personnel or the prosecution's experts pertaining to the acquisition, preservation, and/or analysis in the course of their investigation;
   e. Notes, documentation, photographs, and/or videos of the devices in original digital format pertaining to the seizure and acquisition of the devices including but not limited to records documenting the chain of custody, documented serial numbers for devices seized, handling or usage of devices, or any further document establishing the span of control over the device from seizure to the current disposition;
   f. Policies, documented procedures, distributed resources, and guidelines of the government agencies pertaining to the handling of digital evidence;
   g. A copy of the job description, résumé or *curriculum vitae*, and all testimony reviews of any prosecution expert involved in the seizure, handling, or examination of the items.

## C.    Other Preliminary Discovery Requests

12. All Recordings related to charged offenses (before, during, and after the alleged offenses), including any associated transcripts produced through human or computer transcription. If the government's position is that all such Recordings already have been produced in discovery, please certify as such.

13. All photographs, videos, charts, diagrams, maps, crime scene logs, photo logs, reports or other renderings or memorialization of all evidence collected from the crime and from all other locations where law enforcement seized evidence that the government believes may be relevant to this case.

14.    All records and information (including but not limited to photographs, videos, Recordings, drone footage, notes, and reports) related to any law enforcement interaction with, or investigation of, Teresa Youngblut or Felix Bauckholt in Vermont in January 2025, including the time period between January 14, 2025, and January 20, 2025.

15.    All communication between Officer Wilda, Officer Russell or other members of law enforcement with Officer Maland about the surveillance and investigation of Teresa Youngblut and Felix Bauckholt, including communications from January 20, 2025. (*see* Bates 1408.02).

16.    Complete contents of Agent David Maland's phone(s) in his possession during the vehicle stop. This request specifically includes any Recordings of the vehicle stop on January 20, 2025, as well as any searches, record checks or communications regarding Teresa Youngblut or Felix Bauckholt (collected per Bates 1492.03; *see also Bates* 96-97)**.**

17.    Complete contents of all Android Team Awareness Kit (ATAK) accounts for all law enforcement members involved in the surveillance and vehicle stop of Teresa Youngblut and Felix Bauckholt, including that of Agents Maland, Mayfield, Whipple, and Yautz.

18.    All communications between Agent Maland or any other law enforcement officer and AUSA Matt Lasher regarding the vehicle stop of Teresa Youngblut and Felix Bauckholt, including but not limited to a request for a bomb-sniffing dog.

19.    All research and documents by DHS, CBP, Anti-Smuggling Unit (ASU) or other law enforcement officials regarding the immigration status of Felix Bauckholt, including the January 15 investigation that Felix Bauckholt was a visa holder (*see* Bates 1408.02).

20.    All records of communications or alerts from Private Investigator Julie Jones to Vancouver law enforcement, DHS or FBI, and any communications amongst any of these agencies regarding Julie Jones's communications or alerts (*see* Bates 1517.04).

21.    All radio and written communications between and among law enforcement officers regarding surveillance and the vehicle stop of Teresa Youngblut and Felix Bauckholt, including but not limited to text or chat messages on any platform, other electronic messages, and dispatch recordings. This includes messaging after the vehicle stop and shooting incident on January 20, 2025. This also includes all messaging on personal cellphones or electronic devices.   This also includes any messaging that indicates a bias for or against Teresa Youngblut or any of Youngblut's attorneys or defense team.

22.    Copies of all preservation instructions provided to any law enforcement official involved in the surveillance, investigation or vehicle stop of Teresa Youngblut or Felix Bauckholt, including requests to preserve communications made after the vehicle stop on January 20, 2025.

23. Documentation of any facial recognition software search, request for search, or search results obtained or conducted in this case, including any provided to DHS, CBP or ASU by another law enforcement agency or private business, and policies and procedures related to facial recognition software.

24. Documentation of any automatic license plate reader (ALPR) data collected, obtained, or searched by DHS, CBP or ASU in this case, including the parameters of any ALPR searches conducted in the course of investigation and all results generated, and policies and procedures related to ALPR systems.

25. Documentation of any ShotSpotter alerts issued, or data shared in this case, including any ShotSpotter alerts sent to DHS, CBP or ASU and any requests for data or correspondence from DHS, CBP or ASU to ShotSpotter, and policies and procedures related to ShotSpotter.

26. Documentation of any social media searches, data obtained from social media, and social media network analyses conducted in this case, including audit trails and metadata for social media searches conducted by officers and interactions between officer-controlled accounts and [client] or witnesses' social media accounts, and policies and procedures related to social media evidence.

27. Documentation of any use of Packetalk in this case or the use of any other predictive policing software, and policies and procedures related to the use of such software.

28. Documentation of any machine learning (ML), generative artificial intelligence (gen AI), or natural language processing (NLP) tools used to generate or modify evidence.

29. Documentation of any ML, gen AI, or NLP tools used to draft or assist with drafting reports, warrant affidavits, case summaries, or other law enforcement case documentation, including the name of any personnel using such tools in this case, audit trails and metadata for any documents prepared with such tools, and policies and procedures related.to the use of such tools.

30. Documentation of any video analytics software used to compile, analyze, review, edit, annotate, or search video obtained in the course of this case, including audit logs and video metadata for any searches or edits done in this case, and policies and procedures related to the use of video analytics software.

31. Complete logs of Agent or law enforcement access of audio or video Recordings in this case, including body-worn camera recordings, vehicle camera recordings, ATAK communications, radio communications, or Recordings of interviews of law enforcement officers.

32. Notes or Recordings taken by Agent Thompson doing on-scene investigation, as well as interviews with Agents Mayfield and Yautz.

33. All Recordings and notes of the telephone interview of Cameron Thompson (Bates 1450).

34. Critical Incident team interview of Agent Mayfield (Bates 24).

35. Copies or the contents of advisements or paperwork provided to any law enforcement officer who was interviewed regarding the investigation Teresa Youngblut or Felix Bauckholt, including any interviews regarding the vehicle stop on January 20, 2025, and resulting events.

36. Copies or the contents of any promises or discussions of immunity, or any other benefit extended to law enforcement members or other witnesses before they were interviewed regarding this case.

37. Complete disciplinary files for all law enforcement officers involved in the investigation of Teresa Youngblut or Felix Bauckholt while in Vermont, including surveillance and the vehicle stop on January 20, 2025, regardless of the disposition. This request specifically includes a request for all disciplinary investigations regarding the vehicle stop in this case, and the discharge of firearms on January 20, 2025.

38. Recordings of any individual interviews of Officer Russell or Officer Wilda. (*see* Bates 1408, referring to the two officers being interviewed together).

39. Recordings of all interviews of Agents Labor, West, Pillsbury, and Orr (*see* Bates 1510 (302 of an interview with no corresponding recording).

40. All Recordings of all interviews of law enforcement members involved in this case. If the government's position is that all such Recordings already have been produced in discovery, please certify as such.

41. All records of surveillance from the Vermont Drug Task Force (*see* Bates 1408, 1408.02).

42. Copies of all search warrants, including all search warrants for electronic devices seized on January 20, 2025, the vehicle, or Teresa Youngblut's person. If the government's position is that all such search warrants already have been produced in discovery, please certify as such.

43. Copies of all preservation requests sent by law enforcement in connection with this matter, and responses thereto.

44. Any memoranda or reports documenting the execution of any warrant issued in connection with this matter.

45. All underlying data for Bates 86 (a chart of reservations paid by credit card).

46. All underlying data for Bates 5 and 6 (summaries of border crossings).

47. All contents of Section 1A of the case file (*see, e.g.,* Bates 1406). If it is the government's position that the entire contents of Section 1A have already been produced, please certify as such.

48.    Copies of documents retrieved from the Prius (*see, e.g.* photos at Bates 122-552).

49.    Complete copy of the enclosures referred to in Bates 1540 (DMV and LE interactions).

50.    Guidance in place regarding the Anti-Smuggling Unit (ASU) structure and supervision of officers involved in the investigation of Teresa Youngblut and Felix Bauckholt.

51.    An explanation of the official capacity in which all officers were operating at the time of surveillance and the vehicle stop, including Officers Wilda, Russell, Yautz, Maland, and Mayfield, including whether each officer was acting as agents of DHS, CBP, ASU or some other task force or agency.

52.    All Custom and Border patrol policies in effect between January 14-20, 2025.

53.    Any and all materials relating to any Local or National CBP Use of Force Review Board (LUFRB or NUFRB) relating to the January 20, 2025 use of force, including, but not limited to: the investigative document package provided by the CBP Office of Professional Responsibility, including timelines, summaries, video or audio-taped interviews, video walk throughs, any potential administrative, compliance or policy issues identified; any presentation related to a LUFRB or NUFRB review); any report of findings associated with any such review; any legal sufficiency review of any investigative document generated by a LUFRB or NUFRB; any associated written opinions; and

54.    Any and all materials related to any investigation conducted by a Use of Force Incident Team (UFIT), including any evidence or statements gathered by the UFIT; any communications relating to notifications through the National Law Enforcement Communications Center (also known as "Charlie 100" or "Sector"); and the name of the IA duty agent involved in any UFIT review of the January 20, 2025 shooting by CBP Agent Mayfield.

55.    To the extent any officers involved in the surveillance of Teresa Youngblut or Felix Bauckholt or the vehicle stop on January 20, 2025, were operating in any capacity other than strictly Custom and Border Patrol, a complete copy of all applicable policies and procedures under which they were operating, in effect between January 14-20, 2025.

56.    The email from Officer Thompson with a list of all law enforcement officials on scene (referred to in his interview (*see* Bates 1597).

57.    All communications by Teresa Youngblut or others regarding property searches in Vermont, including email and other contact with realtors, including a copy of the email summarized at Bates 1383.

58.    A copy of all the items referred to in Bates 2275 (sent to the Vermont State's Attorney).

59.   Bates Number 2839 refers to letters and writing by Jack LaSota, Michelle Zajko and others – please produce copies.

60.   Copies of the emails attached to Bates 2842 (but not included in discovery).

61.   Recordings, notes and reports of any interview of Ash (Enver) Wong.

62.   All the enclosures referred to in letter to AUSA Lasher from FBI (Bates 3083-3083.02).

63.   Full forensic copies of all electronic devices seized in Vermont on January 20, 2025, from the vehicle Teresa Youngblut was driving.

64.   Complete copies of discovery produced in the following cases (updated as the productions are supplemented):

   a.  C-01-CR-25-000331, C-01-CR-25-000332, C-01-CR-25-000334, C-01-CR-25-163, CR-25-164, and CR-25-165 (Allegany County Circuit Court)
   b.  D-121-CR-25-000208, D-121-CR-25-000209, and D-121-CR-25-000210 (Allegany County District Court)
   c.  VCR240530 and VCR240529 (California Superior Court, Solano County)
   d.  F24-02408 and F25-0194 (California Superior Court, Sonoma County)
   e.  2:25-mj-21-kjd (U.S. District Court, Vermont)
   f.  JKB-25-cr-00176 (U.S. District Court, Maryland)

Finally, there are a number of gaps in the bates numbering (such as 1-4, 76-77, and 91-101). Please provide those documents or an explanation for why they have not been produced.

We appreciate the government's prompt attention to these requests. If it would be helpful to schedule a discovery conference to discuss any or all of these requests, please let us know.

Sincerely,

/s/

Steven L. Barth
Christine Lehmann
Julie L.B. Stelzig

*Counsel for Teresa Youngblut*

9