

EXHIBIT
D

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF VERMONT

FEDERAL PUBLIC DEFENDER
ALEJANDRO FERNANDEZ

95 PINE STREET
SUITE 150
BURLINGTON, VERMONT 05401
TEL: 802.862.6990
FAX: 802.862.7836
https://vt.fd.org

ASSISTANT FEDERAL DEFENDERS
SAM ANSELL
STEVEN L. BARTH
CHARLES N. CURLETT, JR.
BARCLAY T. JOHNSON
EMILY C. KENYON

February 13, 2026

AUSA Matthew Lasher
United States Attorney's Office
District of Vermont
United States Courthouse and Federal Building
Burlington, Vermont 05402-0570

Dennis E. Robinson, Esq.
Lisa M. Thelwell, Esq.
United States Department of Justice
Criminal Division, Violent Crime and Racketeering Section
1301 New York Ave, N.W.
Washington, DC 20530

VIA: EMAIL

> **Re: *United States v. Teresa Youngblut*, 2:25-cr-00015-cr**
> **Discovery Requests**

Dear Counsel,

We write in response to your letter of December 16, 2025, which the government offered as a partial response to our discovery request of October 14. The government's letter, in spite of its length, contains little substantive response. And we are still awaiting the documents referred to as pending production, although we understand from our conversation on January 22, 2026, that you expect those documents to be produced within the next month. We are thus largely constrained in our ability to respond to the questions posed in your letter. Until we receive more information, and the referenced supplemental production, it is difficult to say how many of our requests remain outstanding.

Nonetheless, in the interest of encouraging prompt production of discovery, we are sending what responses we can to the government's inquiries based on the limited information

1

you provided in your December 16 letter. After we see the results of the government's referenced inquiries for requested information, as well as the government's pending discovery production, we will follow up with additional correspondence addressing what remains outstanding from our October 14 requests.

The government's December 16 letter includes several refrains; we address these first.

**First,** our discovery requests specifically sought materials in the possession, custody or control of various law enforcement and government agencies who have been identified as sources of discoverable information, whether through public statements or documents already produced in discovery. For example, the FBI issued a public statement on January 21, 2025, advising that it "continue[s] to work closely with our federal, state, and local partners to piece the details of this incident together. We want to extend our sincere thanks to our law enforcement partners from the Newport Police Department; Orleans County Sheriff's Office; Vermont State Police; Bureau of Alcohol, Tobacco, Firearms, and Explosives; Homeland Security Investigations; and Border Patrol for their swift response to assist with securing the scene, processing evidence, and following investigative leads." In a January 24, 2025, press release, the DOJ noted that the FBI was leading the investigation into the shooting "with substantial assistance" from the same listed law enforcement entities.

In addition, the government has repeatedly stated in public pleadings and in court proceedings that it is investigating other charges involving other individuals in other jurisdictions within the United States. *See, e.g.*, ECF Nos. 5, 20, 79. And items already produced in discovery refer to communications with other law enforcement agencies regarding surveillance of our client that preceded the incident in this case, as well as ongoing investigations.

In response to the defendant's unremarkable request that the government's discovery production include materials from all involved entities, the government does not dispute that any of the listed entities has discoverable information or assert that it cannot access such information. Instead, the government's response suggests (without basis) that the defense request "could imply" that the defense views each of the listed entities as "part of the prosecution team in this case, which would be inaccurate and overly expansive." The government then attempts to shift the burden to the defense to identify which information it believes is "related conduct" to the charges in the indictment. *See* Dec. 16 letter at p. 2.

To the contrary, it is the government's responsibility to locate, identify and produce all relevant information, whether in the possession of the United States Attorney's Office for the District of Vermont or another government or law enforcement entity. And of course, the government has an affirmative obligation to seek out potentially exculpatory evidence, which would apply to the charges, statutory aggravating factors, and potential mitigation factors. It was the government's decision, over defense objection, to seek the death penalty so early in the process, which means that all of the statutory aggravating factors noticed by the government, as well as any potential mitigating factors, are all "related conduct" to the charges in the indictment. *See United States v. Saenz,* 721 F. Supp. 3d 188, 193 (E.D.N.Y. 2022) ("The filing of the Notice

2

of Intent to Seek the Death Penalty, standing alone, represents a material change in the interests at stake and the scope of the Government's obligations under Rule 16 and Brady."); *see id.* at 194 (noting that "once the Government files the Notice of Intent listing aggravating factors, those obligations broaden to include information that may rebut the aggravators or buttress potential mitigators.").

The defense has identified all of the entities that, based on public statements and information already produced in discovery, are expected to have relevant, discoverable information, and we expect that the government will confer with these and any other involved entities to ensure a complete discovery production in this capital case.

If, after such inquiry, the government believes that one of the listed entities has no discoverable information, that the government does not have access or permission to produce such information, or that information is otherwise not subject to discovery, please identify those entities and categories of information with enough specificity that we may properly confer and seek the assistance of the court as needed.

**Second,** in response to many of the defense requests, the government states it will make inquiries, or is in the process of requesting the information, from other agencies, or that it "believes" all information "in its possession" has been produced. We look forward to hearing a further response from the government in response to its inquiries, and we repeat our position from the prior paragraphs that the government has an affirmative obligation to seek out discoverable information, including the items requested by the defense.

**Third,** the government several times states that it is only now taking steps to obtain information, such as communications among involved law enforcement officers. This raises substantial concerns about the government's diligence in preserving essential and possibly exculpatory evidence in this case. The fact that the communications of officers involved in the surveillance and vehicle stop of defendant Youngblut – including communications preceding, during, and immediately following the charged offenses – were not immediately collected and preserved following the incident is highly troubling, especially in light of the defense's clear demand, sent to you on February 14, 2025, to preserve all such information. We ask that the government take immediate steps to secure and extract full forensic copies of all the phones or other devices used by officers/agents in the surveillance, stop, and investigation of the stop. To the extent the government takes the position that any requested information is no longer available, we request a full accounting of what efforts were made to secure or retrieve any such information since January 20, 2025.

**Fourth,** the government repeatedly requests clarification on the basis of defense requests for communications regarding various forensic analyses, autopsy examinations, surveillance, and the vehicle stop. We do not understand the need for clarification for the requested communications in areas of such obvious and direct relevance in the case. If there is a specific objection to a particular document, i.e., work product, the government can note that. But the defense repeats its request for all requested communications.

3

**Individual Requests and Apparent Objections**

The government responded to numerous discovery requests with a demand that the defense provide an explanation for why the requested information was relevant or discoverable. In its parsimonious interpretation of relevance and discovery obligations, the government appears to forget that the scope of its discovery obligations, relevant information, and *Brady/Giglio* obligations expanded exponentially when it filed a notice intending to seek the death penalty. Rather than shifting the burden to the defense to justify its requests for discovery – almost all of which are based on information already referenced in the limited discovery produced to date – the government should instead explain its reason for withholding non-privileged information and materials when it knows that the range of information that may be mitigating is essentially boundless, and when the scope of its *Brady/Giglio* obligations applies to all mitigating factors related to guilt or sentencing.

**Defense Request No. 19 –** You have requested clarification on the relevance of the research and investigation into the immigration status of Felix Bauckholdt, even though the government has already produced partial information and is conducting further inquiries. The government has repeatedly referred to the immigration status of Felix Bauckholdt as a basis for the vehicle stop, and the discovery contains numerous contradictory statements about that immigration status. We repeat our request.

**Defense Request No. 20** – You have requested clarification of the request for communications between private investigator Julie Jones and various law enforcement entities in this case, and among law enforcement about those communications. As you know, Ms. Jones was hired by our client's family, and the government has produced purported communication between Ms. Jones and our client. Any communication with or about Julie Jones is expected to contain information necessary for the defense to investigate the offense and possible mitigation.

**Defense Request No. 22** – You have asked for the relevance of preservation requests made to law enforcement officials involved in the surveillance and stop. Whether the government and law enforcement officials adequately preserved evidence is always relevant in a criminal case. In this case, there are already causes for concern about the diligence applied. For example, you have told us that the government has not obtained communications from involved officers about the surveillance and stop, a year after the charged incident. The instructions provided to these officers on their obligations to preserve evidence, and lack of efforts to secure such evidence earlier, are squarely discoverable under Rule 16 and possibly *Brady*. From the discovery, it is also apparent that one of Agent Maland's phones was almost released from evidence shortly after his death, and that some clothing items worn during the incident have not been preserved, raising serious concerns about the diligence of evidence handling preservation in the case.

**Defense Request No. 31** – You have requested explanation for our request for logs indicating which law enforcement officers and agents accessed audio or video recordings or

radio communications. To clarify, the defense does not request information about such access by agents who are solely involved in investigating and prosecuting this case. The defense is requesting complete logs for all officers or agents who were involved in the surveillance and stop, or who were interviewed as part of the investigation after the incident. This would include, but is not limited to, Agents Mayfield, Yautz, Whipple, Wilda, Russell, Thompson, Labor, West, Pillsbury, and Orr, as well as any counsel or union representatives for these individuals.

**Defense Request No. 37 –** The government states that it is unaware of any negative disciplinary findings for law enforcement witnesses it intends to call as witnesses at trial. To be clear, the defense requests complete disciplinary files (not just negative findings) of all officers involved in the surveillance and stop, whether or not they are expected to testify. This would include Agent Maland. In addition, the defense request for all internal investigation into the surveillance and stop is not limited to negative findings; the defense requests the complete investigation. The government's obligation to produce these materials extend beyond *Giglio* as these materials are relevant and discoverable as to the charged offenses, the aggravating factors, and mitigation. If the government intends to object to the production of any or all of these materials, please advise us promptly so that we can timely address any issues with the court.

**Defense Request No. 43** – Please see response above to Defense Request No. 22.

**Defense Request No. 51** – Your letter asks if the defense would like more definitive statements about the listed individual's specific capacity under which they were operating during the surveillance and stop in Vermont. This will confirm that we do want more definitive statements, and we appreciate the government making those inquiries.

**Defense Request No. 64** – In response to our request for discovery produced in the listed cases, you responded that the government may not have access to those materials or a duty to obtain and disclose them. As a starting point, we are requesting copies of such discovery that are within the possession, custody and control of your office. We understand that some of this information is expected to be included in the upcoming production; we can follow up with any remaining requests after seeing what is produced.

In addition to the cases listed in our letter of October 14, 2025, we add the following cases to our inquiry:

1. SCR-733198-1, SCR-733198-2, SCR-733198-3, and SCR-733198-4 (California Superior Court, Sonoma County);
2. CP-23-CR-0000962-2023 (Delaware County Court of Common Pleas, Delaware County, Pennsylvania);
3. F25-03015 (California Superior Court, Solano County)
4. SCR-733198-4-MH (California Superior Court, Sonoma County)

**Discovery Production and Evidence Review**

During our meeting on January 22, 2026, you advised that the government had discovery that could be produced on a rolling basis as early as last week, or in its entirety within a month (with the understanding that additional discovery would follow, particularly with respect to other individuals), and you asked if the defense had a preference. The defense does not have a preference other than to receive the discovery in the most expeditious and efficient way possible.

We appreciate the government's continued attention to these requests. After we hear from you about the result of outstanding inquiries referenced in your December 16 letter and see the documents in the forthcoming production(s), we will follow up with additional correspondence.

As for the physical evidence review, we would like to schedule a date in the near future to examine all items of physical evidence seized in Vermont. Once we have received all inventory and evidence sheets from the seizures in other locations, we can schedule additional evidence reviews, including at other physical locations if needed.

As always, if it would be helpful to schedule a call or meeting to discuss these requests, please let us know.

Sincerely,

/s/

Steven L. Barth
Christine Lehmann
Julie L.B. Stelzig

*Counsel for Teresa Youngblut*

6