UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cr-00015-cr-1 |
| | ) | |
| TERESA YOUNGBLUT, | ) | **Capital Case** |
| Defendant. | ) | |

**Motion to Reconsider Court's Order
Establishing a Screening Protocol for Pretrial Detention Records [ECF No. 106]**

Defendant Youngblut, pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution and the Federal Rules of Criminal Procedure, respectfully requests this Court to reconsider its September 15, 2025, Order. ECF No. 106. That Order establishes a discovery protocol to guard against the inadvertent disclosure of privileged or protected pretrial detention records to the government. *Id.* Reconsideration is now appropriate because a subset of Records were recently released to the government before being screened for privilege, demonstrating that the more robust controls outlined in Youngblut's first proposed screening process, ECF No. 63 at 20, are required.[1] Because of that lapse, the government has received and reviewed privileged information regarding the identity of a member of the defense team.

The defense also requests that the Court hear oral argument on this motion.

---

[1] At the joint request of the parties, the Court has not yet set a deadline for the filing of pretrial motions, in part because discovery remains ongoing. ECF 113, 114. This reconsideration motion is being filed now to prevent additional disclosure of privileged information.

1

## I.    Introduction

On September 15, 2025, this Court issued an Order creating a protocol (the "Protocol") to prevent the inadvertent disclosure of privileged pretrial detention records to the government. ECF 106.  The Protocol was necessary because the "qualitative difference between death and all other penalties," *United States v. Sierra*, 933 F.3d 95, 98 (2d Cir. 2019), creates a unique potential for prejudice to a defendant in capital proceedings if privileged materials are disclosed. *See also United States v. Pederson*, 2014 WL 3871197, Crim. Case No. 12-431 (D. Or. Aug. 6, 2014).

To guard against the unacceptable risk of inadvertent disclosure, the Protocol established two safeguards: *First*, records sought by the government from a pretrial detention facility (the "Records") are sent from that pretrial detention facility directly to the Court. The Court then reviews and makes initial privilege determinations for the Records. ECF No. 106 ¶ 3a–b. *Second*, the Court discloses its index and privilege log of those materials to both parties simultaneously but only releases the non-privileged Records to defense counsel who then has a five-day window to object to the disclosure of records to the government. *Id.* ¶ 3c–e.

Despite good faith efforts by government, correctional, and court personnel, in May and June of this year, each of these controls independently failed. On May 19, 2026, a set of Records were released directly to the government without any prior review or screening for privilege by the Court. (The government, in turn, reviewed the Records). Then, after the Court conducted its privilege review on June 8, 2026, it simultaneously disclosed the records to the parties, without the five-day advance defense-review period established in the Protocol. Privileged information (which had been previously objected to and redacted upon defense review) was included in the simultaneous disclosure.

These failures demonstrate that the Protocol is insufficient to protect Youngblut's constitutional and evidentiary privileges in this capital case. It also underscores the necessity of adopting the defense-first review procedure adopted by *United States v. Gendron*, 2024 WL 1853385 (W.D.N.Y. Apr. 29, 2024), which Youngblut asked the Court to incorporate into the Protocol. ECF No. 63 at 20. That procedure requires the pretrial detention facility to deliver Records directly to the defense or to the Court, and tasks the defense team with indexing and creating a privilege log. This is a simpler approach that would eliminate any future possibility of inadvertent disclosure of privileged materials to the government. The Court should revise the Protocol to add this protection.

## II.    Background

### A.    Procedural History

On February 6, 2025, Youngblut was indicted on one count of using a deadly weapon while assaulting a federal law enforcement officer, under 18 U.S.C. § 111(a)(1), (b), and one count of discharging a firearm during and in relation to a crime of violence, under 18 U.S.C. § 924(c). ECF No. 30 at 1–2. On August 14, 2025, the government obtained a superseding indictment that added one count of second-degree murder of a federal law enforcement officer, under 18 U.S.C. §§ 1111, 1114(a), and one count of violating § 924(c) resulting in death, under 18 U.S.C. § 924(j). ECF 96 at 1-4. That same day, the government filed a notice of its intent to seek the death penalty if Youngblut is convicted of the § 924(j) offense. ECF No. 97.

### B.    The Protocol

Youngblut has been detained since January 20, 2025, at various facilities. On March 4, 2025, Youngblut moved for a protective order to prohibit the government from accessing records generated by those (and potentially other) detention facilities. ECF No. 37. On April

3

3, 2025, the Court entered an order granting in part and denying in part Youngblut's motion. The order "bar[red] the government from obtaining attorney-client-privileged communications and records regarding the number and duration of defense counsel visits." ECF No. 41. But the Court concluded Youngblut had "failed to demonstrate any other privileges are applicable or that any remaining records are confidential and will impair a defense or taint the jury pool." *Id.* The Court therefore ordered the parties to "attempt to agree to a screening process and proposed Protective Order." *Id.* After the parties were unable to reach an agreement, the Court ordered them to submit separate proposed screening protocols. *Id.*

The parties' competing proposals disputed who should receive Records from the pretrial detention facility and perform the initial privilege review. The defense proposed that detention facilities send records directly to defense counsel for initial privilege review, with production of non-privileged materials to the government within 14 days. ECF No. 63 at 20. The government proposed a "filter team" approach whereby government attorneys not involved in the prosecution would screen records before forwarding them to the prosecution team.

On June 24, 2025, and September 5, 2025, the Court held discovery conferences to assess the competing protocols. At the June conference, the Court denied both parties' proposals and instructed that it would conduct the initial privilege review. ECF No. 79 at 19. With that question decided, the Court directed the parties to jointly submit a proposed protocol. ECF No. 79 at 21.

The parties were unable to reach consensus, and the Court convened a second discovery conference on September 5, 2025.  The main dispute was whether defense counsel

would be afforded an opportunity to review Records before they were provided to the

government to further reduce the risk of privileged materials being inadvertently disclosed to

the government. ECF No. 85 at 1. At the hearing, the defense explained that the

government's intent to seek death had

> . . . change[d] every aspect of how we proceed with this case, even something as seemingly ministerial as a review of pretrial records, and the reason I say that, Your Honor—we're not concerned just with attorney-client and attorney work product privilege.
>
> We are also concerned about medical documents and mental health records, because in this particular setting in the context of a capital case, we have an obligation to investigate every possible mitigating factor, and the Government is going to be, again, looking for evidence that it could use to argue an aggravation against our client, either at an innocence-guilt trial or at a sentencing, so each one of those categories takes on heightened importance and merits heightened scrutiny.

ECF No. 115 at 15.

Ultimately, the Court agreed that the heightened risks of inadvertent disclosure in a

capital case meant that a five-day preview period was a necessary additional safeguard. The

Court explained that "I'm thinking about prejudice and fixing it: Do I do it up front and

prevent it from happening?" ECF No. 115 at 45. The Court concluded that "I don't think it's

going to take a lot of time, and what's at risk is the attorney-client privilege, and what's at

risk for [the government] is a tainted prosecution." ECF No. 115 at 42.

On September 15, 2025, the Court issued the Order establishing the Protocol. The

Protocol incorporates a multi-step process to guard against errant disclosures.

*First*, materials are sent directly to the Court:

> The detention facility, upon receiving a request for Pretrial Detention Records from the government, shall send a message confirming receipt of the request for the materials to the

5

government. The detention facility shall then transmit any responsive materials directly to the court . . . .

Protocol ¶ 2(c).

*Second*, the Court or an appointed Special Master reviews the records and makes privilege determinations within a fifteen-day period. After cataloguing all records in an index with a privilege log, the Court provides the index and log to the government and the defense. "At the same time, the court will provide the content of all Pretrial Detention Records it has reviewed to *counsel for the Defendant*." Protocol ¶3(b)–(c) (emphasis added). Counsel for the defense is then given

> five (5) business days to object to the disclosure of the records to the United States. Objections to disclosure or additional information to support a claim of privilege may be provided directly to the court *ex parte* by counsel for the Defendant. Absent an objection from counsel for the Defendant, the court will provide any non-privileged records to the United States twenty (20) days after receipt by the court.

Protocol ¶3(e).

###### C.    Post-Protocol Productions and the Breach

To date, the government has sought—and Records have been produced to the court—on three occasions: October 2025, November 2025, and most recently, May 2026. The parties followed the protocol successfully with respect to the first two productions. This prevented the release of privileged information to the government: in November, the Court identified a set of privileged, attorney-client calls that had been included within the Records during its screening. Then, during the defense preview period, counsel identified a team member name that the Court had not redacted and raised an *ex parte* objection to prevent its release.

But in May, the Protocol broke down at two separate stages of the process. *First*, pretrial detention records were apparently released to the government on the same day they were transmitted to the Court, before being screened for privilege. *Second*, following the Court's privilege review (which occurred after the government received the documents), the documents were simultaneously released to both parties, with no opportunity for the defense to "preview" the records for potential privilege. The chronology of these events is drawn from a series of communications between court personnel, government employees, and the defense, which are briefly summarized here

***Release of records to government prior to Court review.*** On May 5, 2026, a government paralegal emailed a staff attorney at the Vermont Department of Corrections to notify him that they had uploaded a subpoena request to a shared folder and reminding him to follow the Protocol's requirements. On May 19, 2026, the staff attorney responded that they had been having trouble sending Records to the Court email address and asked the government paralegal to seek assistance from the Court. The government paralegal did so, and later that day, chambers responded by sending a link to all of the unscreened files to the paralegal. That link, which is still active, includes six audio files, a spreadsheet of call records, and a pdf of text communications. After receiving the link, the government reviewed all of the records.

In AUSA Lasher's view,

> In retrospect, those records appear to have been provided to our office prematurely without having been screened pursuant to the Protocol Order. It appears that they were later screened by the Court and then sent to the parties by email link today. I was not aware that we had received jail records for your client that the Court and your office had not reviewed, but that appears to have occurred based on what I currently know. I think both iterations were inadvertent infringements of the Protocol Order.

***Simultaneous release of documents to defense and the government***. After the unscreened records had been released to the government, the Court conducted its review and indexing of the Records. It concluded that none were privileged, and on June 9, 2026, the Court sent its privilege log, along with all of the documents, to both parties at the same time. The released Records included the unredacted name of the team member who defense counsel had identified and redacted during its November review.

Later that day, defense counsel notified the Court of the breach and conferred with the government, who agreed not to access or review the records until the defense had screened them. Following that discussion, the Government determined that it had already reviewed the records after their release in May, which apparently preceded to the Court's review.

## III.    Legal Standard

Although the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsiderations, such motions "have traditionally been allowed within the Second Circuit." *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y 2006) (citing *United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993)). In general, reconsideration is justified "when there is: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice." *See United States v. Folks*, 2020 WL 5542707, at *1 (D. Vt. Sept. 16, 2020). Here, reconsideration is proper under two of these prongs: recent events are new evidence that the Protocol is not reliable, and inadvertent disclosure of Records would result in manifest injustice in a case where the defendant's life is at stake.

**IV.    Reconsideration is warranted because new evidence demonstrates that the Protocol cannot adequately protect privileged materials and that revisions are required in order to prevent manifest injustice.**

The release of records to the government prior to Court screening—and the later simultaneous release of records to both parties without allowing the defense a five-day "preview" period—are newly discovered evidence that was not available at the time the Court entered its September 15 Order. It demonstrates that despite the Protocol's careful design, it failed to prevent the precise harm it was intended to avoid.

That failure appears to have been caused by the detention center's difficulty relaying records to the Court. The government then initiated an *ex parte* communication with court staff to resolve the problem, which resulted in the premature disclosure of records to the government. Throughout the development of the Protocol, defense counsel warned that any protocol not requiring defense-first receipt and review of the records could create inevitable, and reasonably foreseeable, risks to privilege. *See, e.g.*, ECF No. 63 at 23.

The Court's protocol relies on detention facilities to directly transmit materials to the court. But the premature disclosure shows that this directive, standing alone, is insufficiently protective. Detention facility staff do not have a direct line of communication with the Court to navigate questions that arise, or technical difficulties. Instead, they rely on the government, who they are most accustomed to working with on pretrial detention records subpoenas. So, when the facility encountered technical issues, it reached out to the government—not the court—for assistance. The government then became the party troubleshooting the issue for the detention facility and the court, and in that context, the error occurred.

This incident illustrates that the more moving parts involved, the more complex the procedures to send and review records, the higher the risk of inadvertent disclosure. Indeed,

9

the recent set of documents included privileged information (the nature of this disclosure had been previously sent to the Court in an *ex parte* objection and request for redaction). Disclosure of privileged information would threaten to deprive Youngblut of their Sixth Amendment right to counsel. And while deprivation of that right is always a serious matter, it would result in manifest injustice to Youngblut, given the "qualitative differences between death and all other penalties." *Miller v. Alabama*, 567 U.S. 460, 481 (2012). The Supreme Court "has demanded" in capital cases that "factfinding procedures aspire to a heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (opinion of Marshall, Brennan, Blackmun, and Stevens, JJ.); *see also, e.g.*, *Spaziano v. Florida*, 468 U.S. 447, 456 (1984) ("We reaffirm our commitment to the demands of reliability in decisions involving death.").

At the September 5, 2025, hearing, counsel emphasized the irreparable nature of privilege violations in a death-authorized case:

> Here we're not only in the context of a criminal case where our client has [a] constitutional interest at stake, but we're in the context of a capital case . . . the perils of creating opportunity any more than we have to or the inadvertent disclosure of privileged materials creates so much more prejudice and can directly implicate our client's right to effective representation. That's just not a risk that we think is acceptable.

ECF 115 at 39–40. The case of *United States v. Pederson*, 2014 WL 3871197, Crim. Case No. 12-431 (D. Or. Aug. 6, 2014) is a powerful illustration of the dangers of mishandling privileged materials in a capital case. *See* ECF 69 at 8 (summarizing *Pederson*). In that case, the Court was forced to convene a four-day evidentiary hearing to examine privilege violations, after which the government withdrew its notices of intention to seek death. There, the mishandling of privileged communications "very nearly jeapordiz[ed] this case altogether. *Id.* at * 1.

10

**V.    The defense-first protocol adopted by the *Gendron* court would eliminate the risk of inadvertent disclosure.**

In prior pleadings and arguments, Youngblut urged the Court to follow the record-review protocol established in *United States v. Gendron*,. No. 22-CR-109-LJV, 2024 WL 1853385, at *6 (W.D.N.Y. Apr. 29, 2024); ECF 37 at 7–8. In *Gendron*, the Court ordered all pretrial detention records be provided to the defense for review. After such review, the defense creates a log of any records they want to withhold, identifying the applicable privilege or right they believe protect the records. The *Gendron* court reviews any disputed records in camera and determines whether a right or privilege applies. The *Gendron* court recognized that, "particularly given the stakes in this case," that a defense-first receipt and review approach was "necessary and appropriate." *Id.* at * 5. Not only did the defense have "the relevant information necessary to give the government the information it requests, and no more," the defense was "highly motivated to protect Gendron's rights and privileges." *Id.* That consideration was "paramount given the unique and important nature of the case." *Id.* The *Gendron* court also noted that the defense-first approach "allow[ed] the Court to take a familiar role as a backstop." *Id.* (citing *See In re Grand Jury Subpoenas Dated Mar. 18, 2022 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)). To undersigned counsel's knowledge, there have been no inadvertent disclosures of privileged pretrial detention records to the government in the *Gendron* case.

It is notable that the procedures proposed by defense counsel have already been successfully implemented in *Gendron,* 2024 WL 1853385, at *4, have avoided any disclosure incident like what has occurred here, and did not prove to be unfair or burdensome for either the government or the court. The *Gendron* case also illustrates the merits of the defense approach. After reviewing documents that the prosecution claimed were not privileged, the

11

*Gendron* court ultimately concluded that the government could get much, but not all, of the contested records, thus protecting those privileged documents from inadvertent disclosure.

## VI.    Conclusion

For the reasons detailed above, Youngblut requests that the Court modify its September 15, 2025, Order.

A proposed order is attached.

Dated: July 20, 2026

Respectfully submitted,

By:    */s/ Steven L. Barth*
STEVEN L. BARTH
Assistant Federal Public Defender
Office of the Federal Public Defender
District of Vermont
95 Pine Street, Suite 150
Burlington, VT 05401
Phone: (802) 862-6990
Email: steven_barth@fd.org

Rebekka Higgs
Law Office of Rebekka Higgs, LLC
P.O. Box 134
Conifer, CO 80433
Phone: (303) 489-8505
Email: rh@higgs-law.com

Julie L.B. Stelzig
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Phone: (301) 344-0600
Email: julie_stelzig@fd.org

Counsel for Defendant Youngblut

12