UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:25-cr-00015-1 |
| ) | |
| TERESA YOUNGBLUT, ) | |
| Defendant. ) | |

**RESPONSE OF THE UNITED STATES IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR PRESERVATION</u>**

The United States of America responds in partial opposition to the defendant's Motion

for Preservation of Law Enforcement Communications, Recordings, Photographs, and Other

Information (the "Motion for Preservation") filed on July 1, 2026 (Doc. 132).  The defendant

moved the Court to "order the government to secure, extract, and preserve full forensic copies of

all cell phones or other devices—work, personal, or otherwise—used by officers and agents

involved in the surveillance, stop, arrest, and shooting and the leadup to and aftermath of those

events." *Id.* at 15.  The United States has undertaken and will undertake efforts to preserve

evidence in the case, and it does not oppose voluntarily informing the Court and defense counsel

of its efforts to preserve and collect potentially relevant evidence.  But the specific substantive

relief requested by the defendant—the compelled seizure and extraction of all devices used by

law enforcement personnel alleged by the defendant to be involved in these events—is

impractical, invasive, and unsupported by law and the circumstances of the case.  Accordingly,

the United States requests the Court deny the specific relief requested in the Motion and

otherwise hold the government to its discovery and disclosure obligations as provided by law.

The defendant included recitations in the "Factual and Procedural History" section and at

the beginning of the "Legal Argument" section in the Motion for Preservation that purport to

1

explain factual events preceding and following the shooting that led to the charges in the Superseding Indictment in this case. (Doc. 132, pp. 2-7.) The United States does not concede that the defendant's recitations and characterizations of the facts, or the invited implications, are accurate. For example, the defendant stated the vehicle stop preceding the shooting occurred "after six days of surveillance[,]" *id.* at 2, inviting the inaccurate suggestion that law enforcement had actively or continuously surveilled the defendant throughout the period between January 14 and January 20, 2026. Similarly, the defendant contended that law enforcement had determined that the defendant's travelling companion was in the United States "on a valid visa." *Id.* at 6. The source the defendant cited for that premise indicated only that the defendant had an issued visa, not that the issued visa was still, or was known to be, valid at the time of the vehicle stop. Nevertheless, the United States does not believe resolutions of any such factual issues are necessary within the context of the present Motion for Preservation. The United States acknowledges that law enforcement agents involved in the initial and subsequent observations of the defendant in Vermont and at the vehicle stop used multiple electronic devices—including both government-issued and personal cellular phones—at various times to communicate about the events. That acknowledgement should independently suffice to address the relief sought in the defendant's Motion for Preservation. Accordingly, the United States does not intend to individually address, contest, and seek resolution of the defendant's specific factual representations and characterizations within the context of the present Motion.

The defendant also included speculations in the "Legal Argument" section as to the veracity, consistency, accuracy, and forthrightness of law enforcement agents involved in the investigation. *Id.* at 7-8. The United States does not concede either that scrutiny by supervising agents or agencies would necessarily incentivize individuals to alter their reports or responses or

2

that an individual speaking with a union representative or legal counsel prior to being interviewed by investigators would be an indication of wrongdoing.  Indeed, as defense counsel would likely agree, an individual suspected of any potential wrongdoing wishing to have counsel present during an interview ought not to be regarded as proof of wrongdoing or malfeasance.

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense[.]"  The United States does not contest the defendant's representations that "contemporaneous accounts of the surveillance, stop, and arrest are material to preparing the defense in this case[,]" or that materials on devices used by the involved agents may be subject to disclosure under the Jencks Act or Federal Rule of Criminal Procedure 26.2 if the agent is called as a witness in a hearing or trial.  (Doc. 132, p. 8.)  Accordingly, the United States has and will continue to endeavor to preserve, acquire, and review any relevant data—including from devices used by agents directly involved in the events leading to the charges in this case—to meet its discovery, Jencks Act, and *Brady* obligations.  The relief requested in the defendant's Motion for Preservation, however, appears to exceed the scope of items in the government's possession, custody, and control, including personal devices of law enforcement agents the defendant appears to allege are part of the prosecution team.  (Doc. 132, p. 1, n. 1.)

While the United States has requested and will continue to pursue the preservation of any known relevant or potentially relevant communications on both government-issued and personally owned devices, those devices are not necessarily within the possession, custody, and control of the government.  Certainly personal devices—other than that of the deceased Border

3

Patrol Agent—are not within the physical possession of the government, and it is not clear that the United States would have the authority to seize and the ability to extract and review data from those personal devices.  The personal devices of involved agents would necessarily contain personal data wholly irrelevant to any law enforcement investigation, and the authority for and privacy implications of a seizure and search of such devices were not addressed in the defendant's Motion.  The government-issued devices of involved agents would likewise include data for unrelated investigations, such that recovered data would include matters not relevant to the current case.  Further, the number of devices included in the defendant's request would be substantial and present issues with acquisition, storage, and review.  A case-specific approach to the preservation, acquisition, review, and disclosure of pertinent communications rather than acquisition and review of full data extractions would be more appropriate.  The United States will inform the Court of its efforts to preserve, acquire, review, and disclose relevant communications from the devices of involved agents at or prior to the scheduled hearing on the Motion for Preservation on September 28, 2026.  (Doc. 138.)

Dated at Burlington, in the District of Vermont, July 29, 2026.

Respectfully submitted,

UNITED STATES OF AMERICA

JONATHAN A. OPHARDT
First Assistant United States Attorney

By:   s/Matthew J. Lasher
Matthew J. Lasher
Assistant U.S. Attorney
P.O. Box 570, Burlington, VT 05402-0570
(802) 951-6725

4