UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cr-00015-cr-1 |
| | ) | |
| TERESA YOUNGBLUT, | ) | **Capital Case** |
| Defendant. | ) | |

**Defendant's Reply to Government's Opposition to Defendant's Motion for Preservation of Law Enforcement Communications, Recordings, Photographs, and Other Information**

In its *Response of the United States in Opposition to Defendant's Motion for Preservation*, ECF 139, filed on July 29, 2026, the government concedes that discoverable evidence exists and that it has failed to fully obtain or preserve that evidence, yet opposes an order to preserve it.[1]

The government's only articulated objection to the preservation of the "Law Enforcement Device Contents" discussed and defined in the Motion to Preserve, is that the government itself may lack the authority to access these devices. This concern simply buttresses the need for a preservation order from this Court, which certainly possesses the requisite authority. Alternatively, the defense can submit an application for a Rule 17 subpoena for the devices to be produced directly to this Court.

Defendant Youngblut offers this Reply to the Government's Response.

---

[1] The defense brief, ECF 132, will be referred to hereafter as the "Motion to Preserve." The government's responding brief, ECF 139, will be referred to as the "Government's Response" or "Response."

1

I.   **The government concedes the existence and materiality of the relevant evidence pursuant to Rule 16, as well as its own failure to preserve.**

The Government makes significant concessions in its Response.

- First, it acknowledges that "law enforcement agents involved in the initial and subsequent observations of the defendant in Vermont and at the vehicle stop used multiple electronic devices –including both government-issued and personal cellular phones – at various times to communicate about the events." ECF 139 at 2.

- Second, the government concedes that "contemporaneous accounts of the surveillance, stop and arrest are material to preparing the defense in this case" and "may be subject to disclosure under the Jencks Act or Federal Rule of Criminal Procedure 26.2 if the agent is called as a witness in a hearing or trial."

- Finally, the government concedes that it has not preserved this critical material, or has done so only partially, to a degree and in a manner that it declines to disclose.[2] The government also declines to promise to preserve this material henceforth.

---

[2] ECF 139 at 3-4. The government does indicate that it "will inform the Court of its efforts to preserve, acquire, review, and disclose relevant communications from the devices of involved agents at or prior to the scheduled hearing on the Motion for Preservation on September 28, 2026." ECF 139 at 4. It is unclear why the government could not provide this information in its Response, particularly as the defense has been requesting this information for months.

II.    **The government's ongoing failure to preserve this critical evidence contrary to past promises and clear legal requirement demonstrates the need for this Court's intervention.**

a.    **The government is empowered and required by law to preserve and disclose concededly material evidence in the hands of agencies participating in the investigation, including state and local agencies.**

As discussed in the Motion to Preserve,[3] the government promised the defense in February of 2025 that it would preserve all government communications related to this case including those of any investigative agencies. The defense relied on this promise. The Government Response to the Motion to Preserve, however, indicates that it still has not preserved this material, or has done so only partially, in a manner and to a degree which it declines to disclose.

The explanation that the government offers in its Response for this failure—its concern that it lacks the authority to access government-issued and personal devices in the hands of diverse agents and agencies involved in the case—is clearly contrary to the law, which requires and empowers it to secure evidence broadly from participating agencies that

---

[3] ECF 139 at 3. The government takes issue with aspects of the factual basis in the Motion to Preserve, including, for instance, the details of Felix Bauckholt's visa status. Gov't Opp. at 2 ("The source the defendant cited for that premise indicated only that the defendant['s companion] had an issued visa, not that the issued visa was still, or was known to be, valid at the time of the vehicle stop."). It is notable, however, that the government does not claim that the visa in question was, in fact, expired or revoked. In fact, the government never actually disputes the contention that the visa was valid and that the government knew it was valid prior to the vehicle stop. Nor do the reports the government produced in discovery related to the visa indicate it was expired or revoked. *See* Bates Nos. 1408.2 and 1589.04. Instead, they indicate, unremarkably, that on January 15, 2026, (five days before the vehicle stop), HSI identified Bauckholt, present tense, "as a visa holder." Bates No. 1408.2. What's more, the defense has repeatedly asked, in writing, for clarification and discovery related to the government's knowledge of the visa's status prior to the stop. The government has not provided any clarification. As such, any factual disputes—to the degree any actually exist— regarding the basis for the stop make preserving the relevant communications even more critical for the defense.

3

is "material to preparing the defense" pursuant to Rule 16[4] and/or "material" pursuant to

*Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny. *See United States v. Holihan*, 236 F.

Supp. 2d 255, 260 (W.D.N.Y. 2002) ("[T]he prosecution alone is responsible for ensuring

that [d]efendant is provided with information discoverable under Rule 16, including

information that is in possession of *other government agencies participating in the*

*investigation.*" (emphasis added)); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he

individual prosecutor has a duty to learn of any favorable evidence known to the *others*

*acting on the government's behalf in the case, including the police.*" (emphasis added)). This

law includes a prior order from this Court, which clearly directs the government to secure

and access material evidence in the hands of federal, state and local agencies that have

participated in any way in the investigation and/or prosecution. Order, January 27, 2025,

ECF 24 ("[T]he Government has an affirmative obligation to seek all information ["favorable

to an accused" that is "material either to guilt or to punishment"] from all current or former

federal, state, and local prosecutors, law enforcement officers, and other officers who have

---

[4] "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

    (i) the item is material to preparing the defense;

    (ii) the government intends to use the item in its case-in-chief at trial; or

    (iii) the item was obtained from or belongs to the defendant."

Fed. R. Crim. P. 16(a)(1)(E); *see also* Order, February 7, 2025, ECF 32 ("Within 14 days of arraignment, or on a date otherwise set by the Court for good cause shown, the government shall make available to the defendant for inspection and copying[, inter alia,] [a]ll discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure.").

participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.")

This Court's order, and the statutory and constitutional requirements, clearly extend beyond federal agencies, to state and local agencies working with the federal government. *See, e.g., United States v. Gregory*, No. 2:05-CR-64, 2006 U.S. Dist. LEXIS 103482, 2006 WL 8439328, at *3 (E.D. Tenn. Oct. 6, 2006) ("[W]hen the Government knows that some other agency had some involvement in the investigation of a defendant, including state and local investigative agencies, 'the Government must determine if those other agencies have information embraced within Rule 16(a)(1)(E).'" ); *United States v. Middendorf*, No. 18-CR 36(JPO), 2018 U.S. Dist. LEXIS 139980, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) ("[W]here the prosecution conducts a joint investigation with another state or federal agency, . . . the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence.") (internal quotation marks and citation omitted).

### b. The Involved Parties are part of the "government" for purposes of Rule 16.

The government's suggestion that the various agencies participating in the investigation in this case (the "Involved Parties" as defined in the Motion to Preserve) are not part of the "government" pursuant to Rule 16 and therefore not within the scope of its duty to preserve or disclose cannot be credited. In the recent *Aziz* case out of the Eastern District of New York,[5] following an exhaustive analysis of the law on this issue, the court

---

[5] The U.S. Supreme Court and the Second Circuit have not definitively interpreted these features of Rule 16. *See, e.g., United States v. Chalmers,* 410 F. Supp. 2d 278, 288 (S.D.N.Y. 2006) ("[T]he Second Circuit has not defined 'the government' for Rule 16 purposes."); *United States v. Ghailani*, 687 F. Supp. 2d 365, 370 (S.D.N.Y. 2010) ("[W]e all

5

confirmed that an agency is part of the government for Rule 16 purposes if it "participated in the investigation" or engaged in a "joint investigation." *United States v. Aziz*, 2026 U.S. Dist. LEXIS 166430, *21-23 (E.D.N.Y. June 1, 2026).[6] In *Aziz*, the offense occurred in a federal prison, and the court found that the Bureau of Prisons participated in the investigation and was thus part of the "government" for disclosure purposes because it immediately contacted the FBI after the offense, secured the crime scene, collected evidence, and helped to facilitate and conduct interviews.

In the present case, the various agencies similarly participated in the investigation. Although discovery is still far from complete and the defense lacks full information on these matters, it is clear that Homeland Security Investigations/U.S. Customs and Border Protection agents, for instance, conducted surveillance of, and ran records checks on, both Defendant Youngblut and Felix Bauckholt for days prior to the stop, conducted a vehicle stop of Bauckholt and Youngblut, reported to the scene after the victim was shot, interviewed witnesses, collected evidence, provided information to the FBI regarding the prior

---

use the phrase 'the government' to refer broadly to the institutions by which we order our civic affairs. But the term has a more specialized and, regrettably, not fully articulated meaning in the context of Rule 16.").

[6] *See also United States v. Holihan*, 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002) (extending Rule 16 to "information that is in possession of other government agencies participating in the investigation." (emphasis added)); *United States v. Martoma*, 990 F. Supp. 2d 458, 460-61 (S.D.N.Y. 2014) (when assessing whether a "joint" investigation took place, "courts look to whether the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions") (internal quotation marks and citation omitted); *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) ("[T]he inquiry is the extent to which there was a 'joint investigation' with another agency.").

surveillance and initial stop, and participated in team meetings in the days following the

offense with the FBI, Vermont State Police, and others.[7]

### c. The government's duty to acquire and preserve evidence extends to material on personal devices used by government agents in this case.

The government's duty to acquire and preserve also extends to material evidence

found on personal devices used by government officials in this case, which the government

concedes exists. Regarding the need to preserve the content of personal devices, courts have

found that "[i]n an environment of widespread use of personal devices for official work,

there is danger of an incentive to shunt critical and sensitive communication away from

official channels and out of public scrutiny, with decisions to forward the communications to

official record repositories postponable at the whim of the public official." *Brennan Center*

*for Justice v. United States DOJ*, 377 F.Supp.3d 428, 435-36 (S.D.N.Y. 2019) (requiring

search of personal accounts). *See also Judicial Watch, Inc., v. Department of Justice*, 319

F.Supp. 3d 431, 438 (D.D.C. 2018) (finding search adequate that was not restricted to

custodian's official account). Evidence of a single record or communication on a personal

account is generally sufficient to justify direct searches of personal devices.[8] In this case, the

---

[7] Bates Nos. 0011-0011.18, 1508, 1522-1522-02, 1442, 1593, 2261. The various agencies involved in the investigation here are a direct part of the "government" for purposes of Rule 16 analysis. Even if they were not, however, the data on the phones related to the investigation of the current case, are also within the "possession, custody or control" of the prosecution. It is notable that this segment of the rule functions to broaden the rule's reach, in that it explicitly extends to material beyond the government's possession. *See Aziz*, 2026 U.S. Dist. LEXIS 166430, at 25 ("any plausible interpretation of Rule 16 should give at least a modicum of non-overlapping meaning to each of 'possession,' 'custody,' and 'control'— the latter two words cannot, for example, be read as mere synonyms of 'possession.'"); *United States v. Stein*, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007) ("The rule speaks of 'possession, custody or control,' not simply 'possession.'").

[8] "'Evidence of a record on a personal account is sufficient to raise a question of compliance with recordkeeping obligations, rendering the presumption of compliance inapplicable.'" *Brennan Center for Justice*, 377 F.Supp.3d at 435-36 (quoting *Judicial Watch, Inc.* 319 F.Supp. 3d at 438.)

Government has conceded, and discovery demonstrates, that personal devices were used for official work related to this case. Other court decisions have made clear the degree to which personal devices are used by CBP and other Department of Homeland Security agents, in particular. *See, e.g., Perdomo v. Mullin, et al.*, No. 2:25-cv-05605 (C.D.C.A., July 28, 2026), ECF 635, Order Holding Defendants in Civil Contempt for Violation of Court Order, *4 (finding that out of 1,253 CBP agents who completed questionnaires, 885 indicated that they use their personal phones for work).

Regarding the government's privacy concerns, federal regulations make clear that any electronic communications regarding federal work held on personal devices constitute federal records, and therefore any agents who choose to use personal devices for government work have no reasonable expectation that those phones will be free from the government searching them for work-related communications. *See, e.g*, *Perdomo*, ECF 506-3, Supplemental Brief in Support of Plaintiffs' Motion for Order to Show Cause Why Defendants Should not be Held in Contempt for Violation of ECF 370, May 18, 2026, Ex. 23 (U.S. Customs and Border Protection Records and Information Management Handbook) at 28, 37-38, 41 (detailing CBP's records management policies, establishing that all email and messaging created in the course of conducting CBP business are federal records and the property of the federal government, regardless of where they are created or stored, and therefore must not be deleted and must be stored in a way to allow efficient discovery, access and use); *see also* 44 U.S.C. § 2911 (disclosure requirement for official business conducted using non-official electronic messaging accounts, establishing electronic messaging as federal records under the Federal Records Act); National Archives and Records

Administration Bulletins 2015-02, 2023-02[9] (clarifying that electronic messages created in personal accounts are federal records for purposes of 44 U.S.C. § 2911, and that the responsibility to transfer and preserve is not limited to federal employees but extends to those, such as contractors, volunteers, and external experts, who work with federal employees).[10]

Significantly, despite the government's clear legal duties to preserve and access these materials, and despite the fact that all the involved devices are in the hands of individuals and agencies that worked with the USAO on the investigation of this case, it appears from its Response that the government *has not even tried* to fully recover this material, alleging, opaquely, that the items "are not necessarily" within its control, and it "is not clear that" it would have the authority to access them. ECF 139 at 3-4. It has also declined repeatedly, both in its most recent filings and in prior correspondence with the defense, to specify what it has and has not done to preserve this evidence.

In sum, the government, fully aware of the importance and discoverability of this evidence, has for a year and a half sat on its hands and neglected its duty pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), *Kyles*, 514 U.S. at 437, this Court's prior order [ECF 24], and 44 U.S.C. § 2911 to preserve this critical evidence. This Court's intervention is therefore required.

---

[9] At https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html, and https://www.archives.gov/records-mgmt/bulletins/2023/2023-02 (last viewed 8/12/2026).

[10] Notably, if the rule were otherwise, government departments could evade discovery by having agents use their personal devices to do their work, and agents themselves could frustrate discovery and shield their work by conducting all official business on personal phones.

### III. This Court has the authority to preserve this evidence.

"Just as the scope and importance of discovery have increased tremendously over the past fifty years, so too must a court's ability to ensure the integrity of that process by exercising its inherent powers in appropriate circumstances to preserve evidence necessary to the process of adjudication." *Toussie v. Allstate Ins. Co.,* No. 15-cv-5235, 2018 U.S. Dist. LEXIS 97222, 2018 WL 2766140, *6-31 (E.D.N.Y. 2018) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (*quoting United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)); *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31 (1962)); *see also The Pueblo of Laguna v. United States,* 60 Fed.Cl. 133, 135 (Fed.Cl. 2004) (discussing "the inherent powers afforded Article III courts to order the preservation of relevant evidence").

Courts of the Second Circuit have embraced this inherent power in the closely related context of spoliation. Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "[A] district court may impose sanctions for spoliation, exercising its inherent power to control litigation." *Id.* Thus, a "federal district court may impose sanctions" for spoliation both under Rule 37 and, "even without a discovery order," under "its inherent power to control litigation." *Schulman v. Saloon Beverage, Inc.*, No. 2:13-CV-193, 2014 WL 1516326, at *4 (D. Vt. Apr. 18, 2014). The power to sanction the destruction of evidence necessarily implies the lesser, prophylactic power to order its preservation before destruction occurs.

In light of the government's failure in this case to preserve critical evidence despite its initial promise to do, and due to the ongoing danger of destruction of this evidence, the defense continues to request that the government be ordered to secure, extract, and preserve

full forensic copies of all relevant devices. This is a remedy which has been utilized by other courts in similar situations, including in relation to agents of Homeland Security and Custom and Border Protection. In *Perdomo v. Mullin*, after the Government failed to adequately search for communications amongst government agents (including CBP agents) involved in allegedly unlawful stops, the district court ordered the government to forensically image all involved government agents' phones, including personal phones, preserve those images, and then search them. When the government failed to do so, it was held in contempt. *Perdomo*, ECF 635, Order Holding Defendants in Civil Contempt for Violation of Court Order. In *American Oversight v. DHS, et al.*, the government created forensic images of government phones and preserved them on a government server in compliance with the court's requirements of preservation and disclosure. *See American Oversight v. DHS et al.*, No. 1:25-cv-3699, (D.D.C. 2025), ECF 16-1, Supplemental Declaration of Michael Weissman, U.S. Department of Homeland Security, Joint Status Report, November 21, 2025, ("To most expeditiously collect and confirm preservation of the electronic messages for these DHS Officials, OCIO deployed technicians to manually access the device and archive a copy of the device, including all electronic messages. . . .These copies are being stored on a secure, restricted OCIO server. A notice to preserve documents and electronic records that relate to the subject matter of the complaint in this case has also been issued to each of these officials.").

Significantly, any more limited order risks the loss of this evidence, which is held insecurely on a multitude of personal and government-issued devices currently in use. As discussed in the Motion to Preserve at 12-14, accidental data deletion on cell phones and similar devices is extremely common, due to settings that automatically delete certain data

after a given period of time, or user error such as incorrect tapping of keys, improper file management, and factory resets. Phones can be damaged or lost and have insufficient cloud-based back-ups. People also switch devices and do not transfer over all relevant data. Recovery of deleted data may be possible, but newer storage technologies and security measures have made the process of retrieving deleted data increasingly complex, and time is of the essence as deleted data is gradually overwritten. Also, cellular service providers do not themselves retain call detail records and text messages for long periods, which means this information may be available only on the devices themselves.[11]

Alternatively, given the government's alleged lack of authority, this Court could order that the devices be submitted directly to the Court, either on its own initiative or in response to a defense application for a Rule 17 subpoena. The Court could then order one of the parties, or both via a jointly-agreed protocol, to employ an arms-length expert to produce full forensic copies of the devices to submit to the Court. *See Est. of Loury v. City of Chicago*, No. 8:16-cv-1440, 2017 U.S. Dist. LEXIS 232913, 2017 WL 8117452 *4 (N.D.Ill. 2017) (in a civil rights case, ordering that the defendant law enforcement agency and officers produce

---

[11] Forensic imaging is also required because, particularly after the long period of time that has passed since the offense in this case, case-related material may no longer be obviously accessible to the user but may indeed still be present, preservable via a forensic image, and accessible via expert technique.

The Scientific Working Group on Digital Evidence (SWGDE) recommends that any limitations on the disclosure or admission of information acquired from cell phones be applied "post-acquisition," *i.e.,* post-extraction of the full contents of that phone, "to avoid excluding potentially valuable in-scope information from analysis and judicial review." "[T]here are many ways in which information is stored on specific devices or systems. Attempts at minimization [of the scope of extracted data] have a significant potential to exclude relevant inculpatory and exculpatory information. For this reason, … the necessity of acquiring the full contents of data storage devices and their media, when possible, is significant." SWGDE, *Considerations for Required Minimization of Digital Evidence Seizure*, (available at: https://www.swgde.org/documents/published-complete-listing/16-f-002-considerations-for-required-minimization-of-digital-evidence-seizure/) (last viewed 08/12/2026).

a forensic copy of plaintiff's phone and provide it to plaintiff for initial review, retaining a

copy of the forensic image but refraining from searching that copy absent court order); *Lewis*

*v. Archer Daniels Midland Co.*, No. 17-14190, 2018 U.S. Dist. LEXIS 210762, *4-9 (E.D.La.

2018) (in a civil rights case, ordering the parties to jointly produce a protocol by which the

devices would be copied by a neutral third-party expert). This Court could then conduct an *in

camera* review of the forensic copy to exclude irrelevant and personal information. *See

United States v. Aguilar-Garcia*, 819 F. Supp.3d 77, 81-85 (N.D.N.Y. 2026) (ordering an *in

camera* review of personnel files from Customs and Border Protection agents for *Brady*

and/or Rule 16 disclosable material).[12]

If this Court declines to order the requested relief, at a minimum it should issue a

specific preservation order directly to all involved agents and agencies to both preserve and

immediately transfer all "Law Enforcement Device Contents" to the Government, which

would then also be required to preserve this material. The defense emphasizes that this

stopgap remedy less securely preserves this critical material, and that a preservation of a full

forensic copy of all relevant devices is therefore preferable. To facilitate this process, and

indeed regardless of the alternative chosen by this Court, the Government should produce a

---

[12] Given the government's ongoing refusal to preserve this evidence despite multiple defense requests and its own acknowledgment of materiality, it is appropriate for this Court, rather than the government, to order this preservation and conduct the related *in camera* review for materiality. The Second Circuit has cautioned that there are situations in which the trial court should not rely on the Government's representations, "but should instead undertake an independent *in camera* review of relevant Government files to determine materiality." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). *See also United States v. Kiszewski*, 877 F.2d 210 (2d Cir. 1989) (holding failure to conduct in camera examination of personnel file of FBI agent was error requiring remand); *United States v. Frizzell*, No. 2:22-CR-148, 2023 U.S. Dist. LEXIS 104186, 2023 WL 4033292 at *1 (D.Vt. June 15, 2023) (undertaking in camera review of personnel files with respect to § 111 prosecution).

full log of all federal, state and local agents/officers and departments/agencies involved in the surveillance, stop, arrest, shooting and initial investigation of this case.

The government's proposal, that this Court and the defense trust it and the government agents themselves to preserve the material as they see fit, is patently inadequate, particularly given its own argument that it lacks the authority to preserve this evidence, its prior failed promise to the defense, its admission that it has not yet fully preserved this evidence one and a half years post-arrest, its failure to be forthcoming about what it has and has not done, and the ongoing danger of deletion and destruction of this evidence.

Dated: August 12, 2026

Respectfully submitted,

By:    */s/ Steven L. Barth*
       STEVEN L. BARTH
       Assistant Federal Public Defender
       Office of the Federal Public Defender
       District of Vermont
       95 Pine Street, Suite 150
       Burlington, VT 05401
       Phone: (802) 862-6990
       Email: steven_barth@fd.org

       Rebekka Higgs
       Law Office of Rebekka Higgs, LLC
       P.O. Box 134
       Conifer, CO 80433
       Phone: (303) 489-8505
       Email: rh@higgs-law.com

       Julie L.B. Stelzig
       Assistant Federal Public Defender

14

6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Phone: (301) 344-0600
Email: julie_stelzig@fd.org


Counsel for Defendant Youngblut

15